## VAN KARNER CHEMICAL ARMS CORPORATION v. UNITED STATES.

### No. 46113.

Court of Claims.

July 7, 1947.

Joseph H. Freehill, of Washington, D. C. (Rufus G. Poole and Schoene, Freehill, Kramer & Fanelli, all of Washington, D. C., on brief), for plaintiff.

Kendall M. Barnes, of New York City, and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues for just compensation for the requisition of machine guns and parts and accessories. The machine guns requisitioned were of various types and in various conditions. There were 127 completely rebuilt and 149 partially rebuilt Marlins, 14 Hotchkiss, 19 Russian Marlins, 4 Vickers, 1 Lewis, 1 Colt-Browning, 1 Chauchau, 1 Van Karner Mark II, and 6 Spandau, all rebuilt. There were also 468 guns yet to be rebuilt, and also parts and ammunition.

The Marlin machine gun had been the standard United States Army machine gun during World War I, but the Army used in addition some Hotchkiss guns and also some Lewis and Vickers guns. The Spandau was the standard machine gun of the German Army from about 1908 to 1915, and the Chauchau gun was a standard machine gun in the French Army during World War I. All of these guns, however, had been superseded by more modern weapons. In 1922 the United States Army adopted the Browning machine gun and declared obsolete the Marlin, Hotchkiss, Lewis, and Vickers guns.

After the above-mentioned guns had been declared obsolete, the Army undertook to render them unfit for use by burning the barrels and the receivers with an acetylene torch. Later, it determined to offer for sale some of these mutilated guns. Plaintiff purchased a quantity of them and sought to recondition them. It put new barrels on the guns in place of the mutilated barrels and repaired the receivers by welding them. It also undertook means to improve the operation of the guns by eliminating, so far as possible, the danger of jamming. It also undertook to make the guns adaptable for use either as an antiaircraft gun or as a field combat weapon to be fired from the shoulder with the aid of a tripod or bipod.

The repairs, replacements, and improvements made by plaintiff, resulted in a gun which satisfactorily stood a series of tests to which it was subjected at the suggestion of the Navy Department and of the Russian Government and on plaintiff's own initiative. It, however, was not such a gun as would have been accepted by the United States Army, but it was satisfactory for some uses.

During 1940, 1941 and for a part of 1942 there was a limited market for these guns. A small quantity of them had been sold to the Norwegian Government, some to the Dutch Government, and some to the State of Minnesota. The largest sale of them was of some 15,000 to the British Government sometime after the disaster at Dunkirk. These sales had been at prices ranging from $150 to $300 a gun, except those sold to the British Government which were at a price of about $23 a gun. This sale was made by the United States Government and was of Marlin guns in their original condition.

Not long before the requisition of plaintiff's guns the Navy Department was carrying on negotiations with plaintiff for the purchase of some 2,500 of them at a price of $266 a gun, subject to renegotiation. Before this sale could be consummated, however, the production of Browning machine guns had increased to such an extent that the Army was able to supply all the needs of the Navy with the Browning gun, and the proposed sale of the reconditioned Marlin guns was not consummated.

No sales of any of these guns is shown to have been made after the middle of 1942. The principal reason for this is that the volume of Browning guns being manufactured had increased to such a point that there was an adequate supply of this gun not only for the needs of the armed forces of the United States, but also for the needs of all of its allies. Indeed, prior to the requisition of plaintiff's gun the demand for machine guns had been so far supplied that the manufacturers of the Browning gun had been ordered to decrease production of them from 20,000 a month to 16,000 a month, although this was only 50 percent of the capacity of the plants manufacturing them. These guns were selling at a price of $76.74 a gun and were far superior in every respect to plaintiff's guns. They were being supplied to our allies under the Lend-Lease Act, which necessitated no cash outlay by the allies of the United States. As a result the market for plaintiff's guns had practically disappeared.

In the early part of 1943 the Navy Department undertook to sell some of its surplus Lewis and Marlin guns to our allies, but was unable to get any offer for them, and finally disposed of them as scrap. Had defendant not requisitioned the guns, we have serious doubt that plaintiff could have disposed of them at all, at least not until the next war.

One of the defendant's witnesses, however, Colonel Green, who was the Chief Engineer, Small Arms Division, Industrial Service, of the Ordnance Department of the United States Army, testified that the 127 rebuilt Marlin guns had a market value of $13 a gun, and the defendant in its proposed findings of fact and in its brief suggests that just compensation for the requisition of them does not exceed this amount. By implication the defendant suggests this as the correct amount. We have adopted this suggestion and have fixed fair and just compensation for the requisition of these guns at $13 a gun. We are of opinion that they could not have been disposed of for a greater amount and that this amount does represent fair and just compensation.

We think, also, that this is fair and just compensation not only for the 127 rebuilt Marlin guns, but also for the Russian Marlins, the Hotchkiss, Vickers, Lewis, Colt-Browning, Chauchau, Van Karner Mark II, and Spandau guns. Nothing in the record leads us to believe that any one of these guns was of much more value than another. We have, accordingly, found a value of $13 a gun for all of the completely rebuilt guns, irrespective of the model. The 149 partially completed Marlin guns were, according to the testimony, about 75 per cent complete. We think fair and just compensation for these guns is $10 a gun.

The remainder on which practically no rebuilding had been done, we think, were worthless, except for their scrap value. The cost of rebuilding them largely exceeded what plaintiff could have realized for them. We have, therefore, allowed plaintiff for these guns and for the parts and accessories, except the ammunition, only the scrap value. Plaintiff does not contend that the ammunition was worth more than that allowed by the War Production Board, which was $621.

Plaintiff is entitled to recover for the completely rebuilt and assembled guns the sum of $2,262, for the partially rebuilt Marlin guns, $1,490, for the ammunition, $621, and for the remainder of the guns and parts, $235.38, a total of $4,608.38, against which the defendant is entitled to a credit of the amount paid plaintiff of $457.98. Plaintiff is also entitled as a part of just compensation to interest at 4 percent on $4,608.38 from November 16, 1942, to April 25, 1944, and on $4,150.40 from April 25, 1944, to date of payment. Judgment will be entered accordingly. It is so ordered.

JONES and LITTLETON, Judges, concur.

WHALEY, Chief Justice, and MADDEN, Judge, took no part in the decision of this case.